IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STRATEGIC DIGITAL SIGNAGE, LLC

                         Plaintiff,                         OPINION AND ORDER

v.

                                                                            18-cv-199-wmc

ASHLEY HOME STORES, LTD.,

                         Defendant.

---

Plaintiff Strategic Digital Signage, LLC ("SDS") sued defendant Ashley Home Stores, LLC ("Ashley") for breach of contract, alleging that Ashley breached the terms of their "In-Store Technology Authorization Agreement" (the "Agreement") by failing to provide content in exchange for SDS's development of technology for Ashley retailers. Ashley moves to dismiss the complaint for failure to state a claim (dkt. #8) on the following grounds: (1) the Agreement did not create an obligation for Ashley to provide such content; (2) signed agreements between Ashley retailers as licensees and SDS, and between Ashley and its retailers regarding content, were conditions precedent; and (3) SDS failed to plead allegations sufficient to entitle it to damages. (*See generally* dkt. #9.) For the following reasons, defendant's motion to dismiss is denied.

BACKGROUND[1]

In July 2015, SDS and Ashley entered into the Agreement, which provided that

---

[1] Facts are drawn from plaintiff's complaint and attached exhibits, including the Agreement (dkt. #1-1). Because the Agreement is attached, it becomes part of the complaint for all purposes. *See* Fed. R. Civ. P. 10(c). Accordingly, the court can consider the Agreement without converting the motion to dismiss into a motion for summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

SDS would develop technology to create interactive catalogues for use at Ashley stores.[2] The In-Store Technology would include interactive catalogues allowing retail customers to browse inventory by using digital touch screen displays. SDS's system promised a "virtual showroom" that Ashley's retailers could display at their various store locations as licensees. (Compl. (dkt. #1) ¶ 6.) At the time the parties entered into the Agreement on July 22, 2015, Ashley was SDS's main customer. In fact, *all* of SDS's resources were then devoted to developing, marketing, and installing equipment for this technology.

Through the Agreement, Ashley provided SDS a license to use its "copyrights, trademarks, trade names, images and other content supplied by [Ashley]" (the "Content"). (Agreement (dkt. #1-1) 1.) SDS developed the technology and eventually installed it in 42 Ashley retail locations, pursuant to agreements between SDS and individual Ashley retail locations. As contemplated by the Agreement, those retailers would also enter into separate agreements with Ashley for a limited license to use the Content with the In-Store Technology. (*Id*.) The Agreement was "to continue for eighteen (18) months." Any time after that initial term, Ashley had the right to terminate the Agreement "without cause" upon "not less than thirty (30) days' prior written notice." (*Id.* at 3.)

---

[2] Among other things, the Agreement explained that:

> SDS has developed for Licensor an in-store technology system that manages the display of video content on Internet-connected in-store video monitors and that may, after continued development, also include additional functionality accessible by in-store consumers such as a virtual catalog of furniture and accessories approved by Ashley for sale in Ashley Furniture HomeStores, virtual room design tools, and shopping and ordering tools (the "In-Store Technology").

(Agreement (dkt. #1-1) 1.)

2

Ultimately, however, Ashley declined to provide Content to SDS. Because of this, SDS could not provide the In-Store Technology to the Ashley retailers, who, in turn, terminated their agreements with SDS. Unable to recoup its significant investment or reap any profits, SDS brought this lawsuit.

OPINION

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). To make this determination, the court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2009). Here, plaintiff has alleged a valid claim for breach of contract against defendant. Under Wisconsin law, a breach of contract claim has three elements: (1) formation of a valid contract; (2) breach; and (3) damages caused by that breach. *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 553 (7th Cir. 2008) (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 296, 187 N.W.2d 200 (Wis. 1971)). At this early stage, the court finds that plaintiff has alleged facts sufficient to state a claim, despite defendant's arguments to the contrary.

*First*, defendant Ashley argues that it was not contractually obligated under the terms of the parties Agreement to provide Content to SDS. (Def.'s Br. (dkt #9) 2.) Rather, Ashley merely agreed to *license* to SDS whatever content it chose to provide. (*Id*.) At this stage, defendant's permissive reading of the Agreement does not seem particularly plausible, much less compelled as a matter of law. The Agreement's recital explains that

3

"SDS desires [to] provide the In-Store Technology . . . to display *video content supplied by* [Ashley]." (Agreement (dkt. #1-1) 1.) At least by implication, Ashley had to understand that SDS was induced to enter into the Agreement by its promise to supply Content for at least 18 months. Under Wisconsin law, courts place heavy reliance on such explicit statements of intent when interpreting contracts. *See Levy v. Levy*, 130 Wis. 2d 523, 534, 388 N.W.2d 170, 175 (1986) ("The recital or whereas clause of a contract may be examined to determine the intention of the parties."); *see also Town Bank v. City Real Estate Dev., LLC*, 330 Wis. 2d 340, 356, 793 N.W.2d 476, 484 (2010) ("The best indication of the parties' intent is the contract itself."); *State ex. rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359, 362 (1990) ("The cornerstone of contract interpretation is to ascertain the true intentions of the parties as expressed by the contractual language.").

Admittedly, the Agreement seems to be written to favor Ashley, with no express obligation to deliver a specific quantity or quality of Content within a specific timeframe. Moreover, the fees for SDS's development work appear to all be due from Ashely's licensees rather than Ashley itself, so much so that Ashley has retained the right to hold those fees for the licensees' benefit and apply those fees "first, to reimburse [Ashley] for any fees advanced . . . to SDS" if not reimbursed before termination. (Agreement (dkt. #1-1) 3.) Still, even on its face, it would seem unreasonable to construe the Agreement as imposing *no* obligation on Ashley to work with SDS to populate its "In-Store Technology" with some meaningful Content. Therefore, plaintiff's assertion that Ashley was obligated to provide Content -- or at minimum had a duty to act in good faith in providing Content during the Agreement's initial term -- is plausible. *Tilstra v. Bou-Matic, LLC*, 1 F. Supp. 3d 900, 910

4

(W.D. Wis. 2014) ("Wisconsin law recognizes that every contract imposes an obligation of good faith in its performance.").

While defendant argues that simply pleading the breach element without citation to particular provisions -- as plaintiff does -- is insufficient to state a claim (Def.'s Reply (dkt. #16) 2), the Seventh Circuit has recognized that a contract is enforceable "if from its plain terms it is ascertainable what each party has agreed to do." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 564 (7th Cir. 2012) (applying Illinois law). A similar principle applies under Wisconsin law: courts must construe contract language "according to its plain or ordinary meaning, consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶37, 363 Wis. 2d 699, 713, 866 N.W.2d 679, 685 (quoting *Seitzinger v. Cmty. Health Network*, 2004 WI 28, 270 Wis. 2d 1, ¶ 22, 676 N.W.2d 426).

In light of this, the Agreement's "Authorization" and "AHL Content" provisions, as well as its opening recital, support an inference that the plain terms of the contract obligated Ashley to provide Content to SDS. Perhaps the facts will prove otherwise, but at the very least, reading the allegations in the Complaint in the light most favorable to plaintiff, Ashely arguably breached its duty to act in good faith to provide promised Content.

Additionally, courts construe a contract so as to give meaning to each provision, without "leaving some of the language useless or superfluous." *Foskett v. Great Wolf Resorts, Inc.*, 518 F.3d 518, 525 (7th Cir. 2008). Again, defendant insists that this principle favors its interpretation of the Agreement, claiming that reading the Agreement as obligating

5

Ashley to provide content -- when the Agreement's plain text only refers to *licensing* this content -- would make some of the contract language superfluous. Specifically, Ashley asserts that plaintiff's proposed reading would render the phrase "a limited license to publish" superfluous. (Def.'s Reply (dkt. #16) 3-4.) Ashley claims that it "very easily could have omitted those words and simply said that Ashley will 'provide SDS with Ashley-supplied content.'" (*Id*.)

This argument is equally tenuous. At the outset, a reasonable person would have little difficulty reading into a licensing obligation an implicit obligation to provide the underlying content to be licensed. Similarly, SDS's interpretation of the Agreement creates superfluity, the "limited license" language simply prevents SDS from acquiring any ownership interest in the Content provided by Ashley. Finally, defendants' appeal to superfluity is self-defeating: looking at the Agreement as a whole, defendant's proposed interpretation would result in a greater amount of superfluity; interpreting the Agreement as only creating a licensing obligation would make the terms of plaintiff's use of the Content unnecessary. Specifically, the "AHL Content" paragraph, which governs SDS's possession and use of the Content (Agreement (dkt. #1-1) 1), would lose much -- if not all -- of its meaning if the contract did not impose a duty on the defendant to provide Content.[3] If an additional contract was necessary to effectuate the defendant's obligation

---

[3] The Agreement specifically provides that

> [Ashley] grants SDS a limited, non-transferrable, non-sublicenseable, non-exclusive license during the term of this Agreement . . . for the sole purpose of publishing such Content through the In-Store Technology located in the applicable stores of licenses . . . . SDS shall not store any Content in data centers outside the United States

6

to provide actual content, why would the Agreement stipulate the terms under which content could be used and ensure that the ownership rights remained within Ashley's ultimate control?

Finally, the "efficacy principle" directs courts in the Seventh Circuit to "interpolate terms" into contracts when doing so would affect a tacit agreement of the parties. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 742 F.3d 751, 752 (7th Cir. 2014) (applying Wisconsin law); *see also TMG Kreations, LLC v. Seltzer*, 771 F.3d 1006, 1012 (7th Cir. 2014) (applying Illinois law) (citing *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91, 118 N.E. 214, 214 (1917) ("A promise may be lacking within a contract, and yet the whole writing may be instinct with an obligation, imperfectly expressed. If that is so, there is a contract.")). Wisconsin courts employ a similar principle when "substantial justice" requires enforcement of an implied term. *See Flores v. Raz*, 2002 WI App. 27, 250 Wis. 2d 306, 318, 640 N.W.2d 159, 165 (recognizing an implied term for performance within a reasonable time where no such term was specified in the parties' contract). At least at the pleading stage, one can plausibly infer just such a tacit understanding here: that defendant Ashley had agreed to provide plaintiff SDS with Content, and that substantial justice requires such a term be present in the Agreement.

---

and shall only access the Content from facilities in the United States. . . . [Ashley] expressly reserves all rights relating to the Content and SDS acquires no right, title, or interest in or to the Content. SDS shall comply strictly with [Ashley's] directions regarding the form and manner of use of the Content. . . . If SDS acquires any rights in the Content, . . . such rights shall be deemed and are hereby irrevocably assigned to AHL without further action by the parties.

(Agreement (dkt. #1-1) 1.)

*Second*, defendant argues that signed agreements between defendant, plaintiff and plaintiff's licensees were conditions precedent to Ashley's obligation to provide Content, and that SDS failed to allege delivery of these agreements or to attach them to the complaint. (Def.'s Supp. Br. (dkt. #9) 6.) To the contrary, plaintiff alleges that the licensees "terminated their In-Store Technology Agreements with SDS" (Compl. (dkt. #1) ¶ 11), which as plaintiff correctly points out, implies that signed agreements already existed between SDS, Ashley and the licensees, as it is impossible to terminate contracts that do not exist. (Pl.'s Opp'n (dkt. #13) 6.)

While defendant argues that plaintiff's pleadings are insufficient because plaintiff did not attach evidence of signed agreements with licensees (Def.'s Reply (dkt. #16) 4-5), Federal Rule of Civil Procedure 8(a)(2) does not require the plaintiff to plead facts in their entirety, but rather only facts that are sufficient to give defendant fair notice of what the claim is and the grounds upon which it rests. *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). Plaintiff has certainly done that much. In particular, the Federal Rules of Civil Procedure do not require a plaintiff to attach evidence to a complaint to satisfy Rule 8's pleading standard. *See Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011) (noting that the Federal Rules do not "require a plaintiff to attach evidence to his complaint").

Certainly, courts in the Seventh Circuit are directed not to consider documents outside of the pleadings, unless these documents are referred to in the *plaintiff's* complaint and are central to his claim, *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994), but *neither* party has submitted these agreements, making any further

consideration of those documents a moot point at the pleading stage. As a result, plaintiff has pleaded adequate facts to survive a motion to dismiss, and the appropriate procedural stage for defendant to raise this argument is on a motion for summary judgment. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (A court's ability to look beyond the pleadings of referenced documents "is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment.").

Third, defendant argues that plaintiff has not sufficiently alleged a claim for damages. (Def.'s Supp. Br. (dkt. #9) 6-8.) This final argument is similarly flawed, at least on the pleadings. Having already found a fair reading of the Agreement suggests -- if not mandates -- that Ashley was obligated to provide Content to SDS, plaintiff would be entitled to all damages proximately flowing from this alleged breach. Contrary to plaintiff's assertion that a motion to dismiss "does not test whether damages would flow from the Defendant's breach of contract" (Pl.'s Opp'n (dkt. #13) 7), Wisconsin law *does* require damages be alleged in order to state a *prima facie* breach of contract claim, *Matthews,* 534 F.3d at 550. However, "a party is damaged if [it] is denied the benefit of the bargain," so that "the award of damages for a breach of contract should compensate an injured party for losses that necessarily flow from the breach." *Id.* at 557.

Here, plaintiff has adequately pleaded those damages, as it has alleged that defendant's breach prevented it from charging participating Ashley retailers development fees for its In-Store Technology, recovering its investment and realizing additional fees for use and maintenance of that technology. (Compl. (dkt. #1) ¶¶ 11-13.). While defendant

9

argues that the Agreement does not expressly contemplate an award of damages (Def.'s Supp. Br. (dkt. #9) 6-7), neither does it preclude such an award under Wisconsin common law. Because plaintiff's allegations are sufficient to support a plausible breach of contract claim under Wisconsin law, defendant's motion to dismiss will be denied.

ORDER

IT IS ORDERED that defendant's motion to dismiss (dkt. #8) is DENIED. Entered this 6th day of March, 2019

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge